Our fourth case on the call of the docket is 109151, Illinois Department of Healthcare and Family Services versus Margaret Wiszowaty. I'm not sure how to pronounce that. It's agenda number nine. Ms. Potts? Good morning, Your Honors. Thank you. Diane Potts for the Attorney General's Office on behalf of the Department of Healthcare and Family Services. May it please the Court, the issue today is whether the General Assembly intended in 1987 to make interest mandatory on missed payments of child support. It's a pure question of statutory interpretation for which this Court obviously exercises de novo review without deference to the appellate court. The Department respectfully requests this Court find the plain language of the 1987 amendments prevails, hold that interest became mandatory in 1987, and reverse the appellate court. Your Honors, 130 years ago, the General Assembly enacted the Interest Act of 1879, and the original interest provision in that statute provided that judgments recovered before any court shall draw interest at the rate of 5% until satisfied. That provision over the last 130 years has remained almost exactly unchanged, except for the rate of interest that was charged. It was 5% in 1879. It rose up to 6% in 1969, 8% in 1977, and finally in 1981, it became 9% where it remains today. This Court had the first opportunity to look at missed payments of support in relation to this interest statute in the case of Pope versus Pope in 1954. It was a divorce case, and the father was ordered to pay support to the mother, failed to do so, and when the mother brought him into court several years later, the trial court refused to award interest on those missed payments of child support. When this case, when that case came to this Court, this Court explained that the original decree, the original dissolution of marriage, did not order an immediate payment of a lump sum, and therefore no interest would be computed from the time the decree itself was entered. The mother, however, argued that the interest should be run on each missed periodic payment of support. The father said no, it shouldn't run until the time that the trial court actually enters a judgment reducing all of those missed payments of support to a money judgment that can be satisfied. This Court agreed with the mother and reversed the trial court and awarded interest on those missed payments. Ms. Potts? Yes. What are the practical effects of holding that mandatory payments date back to 1987, and is there any unfairness to that holding? Well, Your Honor, as I mentioned in my PLA, you know, the Department of Health Care and Family Services is the child support agency, and we have a database that contains all of the orders for support for the 40 program. Not private individuals, but everyone in the 40 program, and when we ran the figures, it was pretty stark that between the time of 1987 and 1999, approximately $1.9 billion of principal accrued in child support arrearages, with about $900 million of that owed to the state. Now, as of the date we ran the figures, finding out what is still owed out there, we ran them effective August 31st of 2009, and $1.6 billion remains unpaid, with approximately half a billion dollars owed to the state. The rest owed to custodial parents throughout the state of Illinois. To answer your question, Your Honor, the Department has always taken the view that the 1987 amendments to the child support statutes and to the CODA civil procedure made interest mandatory and has, you know, has done so. So I would posit that really there wouldn't be that much of a change to this court reversing the appellate court and finding What about collection? Well, collection is, you're exactly right. It's one thing what you owe, and then it's another step to collect it. But what the Department does do is when it gets a payment of support in, it applies that payment to the current child support that's owed. If there's anything remaining, it goes to an arrearage that's owed, and then at the very end, it goes to the principal balance of arrearages are going down if the abogor is making payments up and above the current child support. Your Honors, and then 27 years later, after the Pope case, this court decided Finley v. Finley, and it really rejected the petitioner's argument that missed periodic payments of support actually constituted money judgments for which the interest statute would be automatically applicable. Instead, this court recognized that the trial court set as a chancery court and that equitable powers, it had equitable powers, and one of those equitable powers would be to award interest as it saw fit. But the General Assembly in 1987 changed the whole ballgame. It changed the fundamental character of missed payments of child support and turned them into actual judgments that arose by operation of law. The provision that was added to the Illinois Marriage and Dissolution of Marriage Act, the Parentage Act, and the Public Aid Code provided that any new or existing support order entered by the court shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment in the amount of each payment or installment of support, and each such judgment to be deemed entered as of the date the corresponding payment becomes due under the support order. Each judgment shall have the full force, effect, and attributes of any other judgment of this State, including the ability to be enforced. The significance of that is that now unpaid missed payments of child support constituted actual judgments which bring that into the express provisions of the interest statute that has existed for the last 130 years. And that alone would have satisfied applying interest and requiring interest for missed payments of child support. But the General Assembly in 1987 went even further than that and expressly amended the Code of Civil Procedures, Section 12-109, to provide that every judgment arising by operation of law from a child is deemed to be a series of judgments. The General Assembly did not touch Section 2-1303, commencing 30 days from the effective date of each such judgment. The General Assembly did not touch Section 2-1303 of the Code of Civil Procedure, and it then read, as it does now, that judgments recovered in any court shall draw interest at the rate of 9 percent per What was the General Assembly intending to do in 1987? The legislative history, as the appellate court noted in its decision, it was clear that the General Assembly was under the gun to pass this amendment in order to comply with federal law. But what the appellate court failed to consider and failed to see is that the General Assembly was being mandated, and let me just back up, as part of running the 40 program and getting funds from the federal government, the state's child support program has to be in compliance with what the feds require. And what the feds said that they were requiring each state to do in 1987 is have the state get more money from the federal government, which is a policy consideration. The state to get more money was a policy consideration? The state to get more money from the federal government was a policy consideration. What's clear from the legislative history is that the legislators were very concerned about the loss of the federal funding, approximately $20 million at the time that had been coming into the Illinois General Assembly to fund the child support program. And so, but backing up, what they were looking at was the federal requirement contained in section 42 U.S.C., section 666A9, which required every state to have laws that provide that a payment of child support is an actual judgment by operation of law, and not by the state. And so the federal government had to have a law with the full force, effect, and attributes of a judgment of the state, including the ability to be enforced. Illinois, as I mentioned at the beginning, for the last 130 years has said one of the attributes of a judgment is that it draws interest. And so to bring Illinois' law in district compliance with what the feds were demanding, the General Assembly passed the child support amendments, and the state passed the amendment to the Code of Civil Procedure to specifically say when the interest shall begin on a missed payment of child support. There's nothing in the record in the legislative debates that showed that the General Assembly was intending for any, to overrule Finley. We admit that. But because the federal law required the attributes of missed child supports, payments to be judgments, that's the significance of that mandate. Your Honors, the appellate court also, you know, not only did it fail to look at the plain language of the amendments, it also misconstrued the Court's decision in Finley. It concluded that this Court intended to make judgments for disillusion judgments something different than other money judgments. Not so, Your Honors. When this Court decided Finley, it was looking at a mother who was forced to go without support for 10 years and whom the trial court awarded interest on those missed payments. And it was decided at a time when missed payments did not actually constitute money judgments for which the terms of the interest statute would be available. Moreover, the appellate court's interpretation of Finley as carving out this narrow class of judgments that didn't get automatic interest, like all the other judgments had, conflicts with the plain language of the Interest Act, which, as you know, is a very, very, very, very, very, very narrow class of judgments. For the last 130 years, it has required interest on judgments recovered in any court. Your Honors, as a public policy, families that are forced to go without support should not be treated less important than any other judgment holder. Indeed, without enforcement of an interest provision, the support abogor actually has a perverse incentive for families to go without support. It's a perverse incentive to miss his child support, pay other bills, maybe even invest the money to get some interest for himself. And clearly, that is a reason for not affirming the appellate court's decision and instead reversing that. This Court recently has held in the Landis case and the Hawley case, the Olch case and the Owsley case, that the legislature's use of the word shall means a mandatory requirement. We ask that the 1987 amendments be given full force and effect, the appellate court be reversed. And I see my time has run. Ms. Potts, let me ask you just one question. The appellate court judgment refers to this, the appellate court opinion refers to the judgment of 52889 that it was entered by agreement is what the appellate court ordered. Your statement of facts in the background section of your brief, page seven, doesn't mention anything by agreement. And this is the complication when it's a one-sided case. Is this really a, I mean, how did that judgment, if it was by agreement, become appealable? It absolutely is, I'm sorry, the 52,000 that was agreed upon in the trial court recognized the trial court's ruling that there should be no interest calculated on the judgments that accrued before 2000. If you, the interest that accrued prior to 2000 amounts to about $10,000. So what we were asking the trial court to give us was the judgment for $62,000. But after the trial court made its legal ruling, we went through the calculations, took out the interest prior to 2000, and that's where we came across the $52,000 number. Well, did you agree to that judgment? Well, no. The agreement was if you didn't consider interest prior to 2000, this is what Mr. Wisewati owed. But our argument has always been that that was an incorrect legal holding, that in fact interest was mandatory prior to 2000, and Mrs. Wisewati is entitled to a judgment that includes the interest that accumulated prior to 2000. And that amounts to about $62,000, which the appellate court recognized in its decision. It recognized that the difference of this agreement equated to about $10,000. Thank you. Thank you, Your Honors.